**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 14 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HOME CARE ASSOCIATION OF AMERICA; CALIFORNIA ASSOCIATION FOR HEALTH SERVICE AT HOME, | No.   21-15617 |
| Plaintiffs-Appellants, | D.C. No. 1:19-cv-00929-AWI-EPG |
| v. | MEMORANDUM* |
| ROB BONTA, in his official capacity as Attorney General for the State of California; KIMBERLEY JOHNSON, in her official capacity as Director of the California Department of Social Services, | |
| Defendants-Appellees, | |
| SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 2015, | |
| Intervenor-Defendant-Appellee, | |
| and | |
| GAVIN NEWSOM, in his official capacity as Governor of California, | |
| Defendant. | |

Appeal from the United States District Court

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted January 12, 2022
Pasadena, California

Before:  BOGGS,[**] OWENS, and FRIEDLAND, Circuit Judges.

California requires home-care aides to register with the state's Department of Social Services ("DSS") and to renew their registrations biannually.[1] *See* Cal. Health & Safety Code §§ 1796.24, 31 (2016). In 2018, the state enacted a new statute requiring DSS to provide the names and phone numbers of registered home-care aides to labor organizations for the purpose of "employee organizing, representation, and assistance activities." AB 2455, 2017–2018 Reg. Sess. (Cal. 2018), § 2 (codified at Cal. Health & Safety Code § 1796.29(d)(1) (2019)). The law applies to applicants for new registrations or renewals beginning on July 1, 2019. *Id.* It also creates a procedure for aides to opt out of this disclosure, and orders DSS to give written notice and instructions on how to opt out. *Id.* (codified at Cal. Health & Safety Code § 1796.29(d)(2), (e)).

Two associations representing home-care employers, Home Care

---

[**]     The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[1] We note at the outset that the name of the Director of DSS was mistakenly spelled "Kimberly Johnson" through much of the prior proceedings. The caption of this disposition corrects that spelling to "Kimberley Johnson."

Association of America ("HCAOA") and California Association for Health Service at Home ("CAHSAH"), seek to enjoin the law.[2] They argue that the National Labor Relations Act, 29 U.S.C. §§ 151–169 ("NLRA"), preempts the statute under doctrines stemming from *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), and *Lodge 76, International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976) ("*Machinists*"). The district court granted summary judgment to the state officials and intervenor-defendant Service Employees International Union Local 2015, finding that the associations had established standing to bring their challenge, but that neither *Garmon* preemption nor *Machinists* preemption applied to AB 2455. We have jurisdiction under 28 U.S.C. § 1291, and we review standing and summary judgment analyses de novo. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1087 (9th Cir. 2010).  We vacate the district court's order and remand with instructions to dismiss for lack of jurisdiction.

   **1.** A party asserting standing must satisfy three constitutional requirements. First, it must have suffered an "injury in fact that is concrete, particularized, and

---

[2] Appellants initially filed a complaint for declaratory and injunctive relief against Governor Gavin Newsom, then-Attorney General Xavier Becerra, and DSS Director Kimberley Johnson. Governor Newsom was dismissed as a defendant by stipulation of the parties, and Rob Bonta subsequently succeeded Mr. Becerra as Attorney General.

actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

Second, the injury must be "fairly traceable" to a defendant's action. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). Third, it must be "likely, as opposed to merely speculative," that a court's decision will redress the injury. *Id.* at 181.

The party seeking judicial relief bears the burden of establishing that it has standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). That burden increases as the litigation proceeds: While "general factual allegations of injury resulting from the defendant's conduct may suffice" to survive a motion to dismiss, at the summary judgment stage the plaintiff "must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted); *accord Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013). To sue on behalf of its members, an organization must make three additional showings to have so-called associational standing: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Appellants posit two theories of standing. First, they contend that mandatory disclosure of home-care aides' contact information from DSS to labor organizations will significantly increase the likelihood of unionization, thereby harming the groups' members. Second, they argue that they may litigate on behalf of their members' employees, whose privacy rights would be infringed by AB 2455.

**2.** Even if Appellants satisfy the germane-interest and individual-participation requirements for their standing theory predicated on harm to members, they have not shown that at least one member would have standing to sue on its own.

Appellants offer only vague allegations in support of individual members' standing. They rely on two declarations signed by their own executives to support standing, yet these statements do not show that specific members have suffered or will suffer a particular injury. Both declarations discuss generalized concerns about AB 2455, alleging that it violates employees' privacy interests, subjects them to unwanted labor-organizing communications, and harms employers' ability to protect employee privacy rights, recruit or retain employees, and deal with unions on an equal footing.

But generalized assertions such as these do not meet the burden to demonstrate associational standing at summary judgment. Rather, an association

must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). In *Summers*, the Supreme Court rejected the view that organizational plaintiffs established standing merely because they asserted that they had thousands of members and that there was a high probability that at least some of those members would visit areas affected by a challenged government action. *Id.* at 499. Absent affidavits indicating a "factual showing of perceptible harm," the Court reasoned, the organizations had not demonstrated an imminent injury. *Id.* at 499–500 (quoting *Defs. of Wildlife*, 504 U.S. at 566).

Following that guidance, we have considered and rejected an association's attempt to demonstrate standing at summary judgment by relying on an affidavit that did not specify which, if any, of its members would suffer injury from the challenged conduct. *See Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194–95 (9th Cir. 2013). In contrast, an association can satisfy standing by presenting declarations from specific members attesting to injuries that they had suffered or would experience. *See Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998).

Here, HCAOA and CAHSAH have not provided specific facts that an identifiable member satisfies the requirements for standing at summary judgment.

HCAOA and CAHSAH have not alleged that, collectively, their members include *all* employers of home care aides in California whose employees' personal information is subject to disclosure under AB 2455.  Accordingly, even if we assume that the legislature was correct that AB 2455 would increase unionization of home care aides and thereby would cause cognizable injury to some employers in the state, we could not assume that the affected employers would necessarily be among HCAOA's and CAHSAH's members.  We thus have no evidence in the record of injury to an identifiable member of either HCAOA or CAHSAH. And we cannot rely on speculation as to whether a member would hypothetically be able to make that showing. *See Summers*, 555 U.S. at 499.

**3.** Appellants' contention that they have third-party standing to challenge AB 2455 on behalf of members' employees, because AB 2455 intrudes on employees' privacy rights, turns largely on whether individual members have standing to vindicate an injury to their employees. *See Hunt*, 432 U.S. at 343.

A litigant has standing to sue on behalf of third parties only when it satisfies three requirements: "The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interest." *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (citations omitted).

7

As previously explained, Appellants have not demonstrated that any employer member has suffered, or will suffer, an injury in fact, and that alone precludes third-party standing. *See id.*

Additionally, Appellants cannot satisfy the close-relationship element. The relationship between a litigant and a third party must be one in which the third party's "enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue." *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 488 (9th Cir. 1996) (quoting *Singleton v. Wulff*, 428 U.S. 106, 114 (1976)). This correspondence between an employer and employees existed in *Viceroy Gold Corp.* because nonunionized employees sought to change their working schedules in a way that would violate state law, and the employer sought to change the schedules in the same manner. *See id.* at 488–89. There is no such evidence of consistent alignment of interests in this case: Appellants' employer members do not want labor organizations to have employees' contact information, and some employees may agree, but other employees may want their information to be shared, and still others may not care at all.

Finally, home-care employees face no barrier to bringing a claim themselves. To bar a third party from bringing a claim, a hindrance must present a "genuine obstacle" beyond a "lack [of] a sufficient individual economic stake in the outcome" or "motivation." *Id.* at 489 (citation omitted). Despite Appellants'

8

contention, home-care aides would not sacrifice any privacy rights by participating in litigation because their names were already published prior to AB 2455. *See* Cal. Health & Safety Code § 1796.29(a)(1). And to the extent that employees are concerned about the additional disclosure of their phone numbers to labor organizations, they can opt out and receive instructions about how to do so. *See id.* § 1796.29(d)(2), (e).

Appellants do not demonstrate associational standing either on behalf of their members or on behalf of their members' employees. We therefore have no jurisdiction to consider their *Garmon* preemption and *Machinists* preemption claims.

**VACATED and REMANDED with instructions to dismiss.**